# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK AZEVEDO,<br><br>            Plaintiff,<br><br>      vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>            Defendant | Case No.: 1:11cv01341 AWI DLB<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## **BACKGROUND**

Plaintiff Frank Azevedo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendations to the District Court.

# **FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed for DIB and SSI on January 17, 2008.  AR 122-24, 125-29.  He alleged disability since January 10, 2008, due to hepatitis C and cirrhosis.  AR 148.  After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 72-74, 81-85, 94.  On November 6, 2009, ALJ Daniel Heely held a hearing.  AR 38-67.  ALJ Heely denied benefits on February 24, 2010.  AR 20-33.  On June 9, 2011, the Appeals Council denied review.  AR 1-5.

<u>Hearing Testimony</u>

ALJ Heely held a hearing on November 16, 2009.  Plaintiff appeared with his attorney, Jeff Milam.  Vocational expert ("VE") Stephen Schmidt also appeared and testified.  AR 40.

*Plaintiff's Testimony*

Plaintiff was born in September 1961 and completed the tenth grade.  He can do simple reading and writing.  He last worked in January 2008 as a fabricator, earning $13.50 per hour and averaging sixty hours per week.  AR 42-46.

Plaintiff claimed he could not work because of his liver and his hepatitis C.  He is on a liver transplant list and is undergoing interferon treatment.  The interferon treatment has side effects of fatigue and sleeping a lot.  The treatment is a shot on Monday, five pills in the morning, and two pills in the afternoon.  He takes five pills seven days a week.  The treatment lasts 12 to 18 months.  In addition to his hepatitis and liver disease, he has scoliosis.  AR 46-47.

Plaintiff testified that he used to smoke, but stopped three years ago.  He smoked half a pack a day for about 12 years.  He has not been diagnosed with any breathing problems.  AR 48-49.  He is not drinking alcohol and has not had a drink in two years.  He goes to AA meetings every Saturday and Sunday.  Before he stopped drinking, he had three to four beers a day and

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

then a 12-pack on the weekends.  He is not using any illegal drugs and has not used any in the past two years.  AR 49-50.

Plaintiff reported that he has depression and anxiety, which also stop him from working.  He goes to Dr. Wong in San Francisco for treatment.  He has side effects of depression and hopelessness from his prescription medications and the doctors changed his medication once.  AR 50-51.

Plaintiff has been living with his mother since January 2008.  During the day, he sleeps 8 to 12 hours.  He watches TV for about one and a half hours.  He does not have any hobbies or outside activities.  He still drives about two or three times a week to the store.  He has not taken any long trips since January 2008.  If he is feeling good, he might sweep and do light things around the house to help his mom.   AR 51-53.  He is always tired and when he told his doctors they switched his medicines a couple of times.  AR 53-54.

In response to questions from his attorney, Plaintiff testified that he does not cook and only microwaves food for himself about once every two weeks.  He can fix a bowl of cereal.  He also rinses dishes and puts away his own clothes, but does not wash clothes.  AR 55-56.

Plaintiff reported that he can focus for about forty-five minutes.  The doctor said it was due to an oxygen problem associated with liver disease.  Dr. Plotzker is his treating doctor and Dr. Leonard is his general practitioner.  AR 56-57.  Plaintiff has not received a liver transplant because he is taking interferon.  He did not know why it took so long to get the interferon.  When he takes the interferon, it gives him nausea that lasts an hour.  AR 57-58.

Plaintiff also testified that every two weeks or so, he bleeds from his mouth and his nose.  This has been happening since January 2008.  He also has blood coming out in his stools once a week.  He is taking some compounds that are supposed to help him, but they banded his varices twice in Reno and once in San Francisco.  Since the bandings, the bleeding has been the same.  AR 64-65.

*Vocational Expert's Testimony*

The VE testified that Plaintiff's past work as a welder was medium, SVP 6. His work as a crane operator was light, SVP 5, and his work as a pasteurizer was heavy, SVP 5. AR 58-61. The VE explained that Plaintiff would have transferable skills, including knowledge of operation of welding equipment, welding procedures, fabrication, knowledge of crane operation, and knowledge of operation of pasteurizing equipment for processing milk. AR 62.

For the hypotheticals, the ALJ asked the VE to assume a person of the same age, education and work history as Plaintiff. For the first hypothetical, the ALJ also asked the VE to assume a person who could sit, stand, and walk less than two hours each in normal workday, could lift and/or carry less than 10 pounds even occasionally, could never climb, balance, stoop, kneel, crouch, crawl or work around hazards, would need numerous unscheduled rest breaks more frequently and for longer times than normally allowed and could not maintain even simple, routine task concentration. The VE testified that there would not be any full-time jobs for this person. AR 62.

For the second hypothetical, the ALJ asked the VE to assume an individual who could work at jobs involving simple routine tasks, but nothing complex, technical or scientific, could sit, stand and walk six hours each with normal breaks, and could lift and/or carry 20 pounds occasionally, 10 pounds frequently. The VE testified that this person could not do any of Plaintiff's past jobs, but could do other jobs in the California economy, such as cashier, fast-food and assembly. AR 62-63.

Medical Record

On January 18, 2007, a CT scan showed slight induration or inflammatory change surrounding the pancreas and the gallbladder. AR 204.

On February 6, 2007, a CT scan of Plaintiff's abdomen showed right sided colitis, possible gastritis, liver cirrhosis and splenomegaly. AR 345.

On March 8, 2007, Plaintiff saw Dr. F. Craig Conrath because of thrombocytopenia. Dr. Conrath believed that the thrombocytopenia was secondary to effects from significant alcohol. Plaintiff was to have an abdominal ultrasound. AR 219-20.

On April 25, 2007, Plaintiff again saw Dr. Conrath after a low platelet count of 43,000 during an emergency room visit. Dr. Conrath would not transfuse platelets unless Plaintiff was bleeding. Plaintiff was to have a chemistry panel to recheck liver function. AR 218.

On August 13, 2007, Plaintiff sought consultation with PAC Paul Johns due to liver test abnormalities. Plaintiff reported a history of heavy alcohol used for 15 years. On review of systems, Plaintiff complained of abdominal pain, nausea, vomiting, sleep disturbance, recent dizziness, wheezing, coughing up sputum, anxiety and stress. Following a physical examination and review of a CT scan and lab results, PAC Johns noted abnormal liver functions tests, thrombocytopenia, elevated INR, cirrhosis, history of pancreatitis, abnormal CT scan and alcohol abuse, currently abstaining. Plaintiff was to undergo additional testing, including an EGD for variceal screening. AR 215-17.

On September 18, 2007, Plaintiff underwent a panendoscopy (EGD) with variceal sclerosis or banding. Six bands were applied mid-esophagus. AR 202.

On October 5, 2007, Plaintiff underwent a CT scan of his abdomen. He had a nodular-appearing liver consistent with cirrhosis and signs of portal hypertension. AR 244.

On December 17, 2007, Plaintiff saw Dr. Robert Gish, Medical Director of the Liver Transplant Program at California Pacific Medical Center, for his hepatitis C and cirrhosis. Dr. Gish indicated that the medical complexity was high because of "[l]ife-threatening disease with cirrhosis, esophageal and gastric varices and liver synthetic dysfunction." AR 246. Plaintiff was noted to be having progressive memory loss as a manifestation of encephalopathy and also complaints of sweats, weight loss, myalgias and decreased libido. On physical examination, his abdomen showed hepatosplenomegaly and he had decreased mentation consistent with minimal

encephalopathy. Dr. Gish indicated that Plaintiff needed to undergo a liver transplant evaluation prior to interferon and ribavirin therapy. He started Plaintiff on sodium benzoate due to his decreased memory. Dr. Gish opined that Plaintiff was disabled by Social Security criteria Section 5.05 with encephalopathy, elevated bilirubin, increased INR and low albumin. Dr. Gish recommended a liver transplant consultation, a psychiatric assessment for depression, interferon and ribavirin therapy, liver cancer surveillance and upper GI endoscopy with banding. AR 246-49.

On December 28, 2007, Plaintiff underwent a panendoscopy (EGD) with variceal sclerosis or banding. Five bands were applied mid esophagus. AR 338.

On January 14, 2008, Plaintiff sought follow-up treatment for hepatitis C and cirrhosis from PAC Johns. Plaintiff reported that he had been having problems with forgetfulness and mental confusion. Dr. Gish found encephalopathy and started Plaintiff on sodium benzoate. Dr. Gish also recommended full evaluation for liver transplant before considering treatment with interferon and ribavirin therapy. Plaintiff's bilirubin, creatinine and INR were near normal. On examination, Plaintiff had mild confusion. AR 206-07.

On March 4, 2008, Dr. Brian J. Ginsburg, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form. Dr. Ginsburg opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday and could sit about 6 hours in an 8-hour workday. He had no postural, manipulative, visual, communicative or environmental limitations. AR 286-90.

On March 13, 2008, Dr. Robert Osorio opined that Plaintiff was an excellent surgical candidate for liver transplantation. AR 404-05.

On March 12, 2008, Dr. Catherine Frenette, a transplant hepatologist/gastroenterologist, evaluated Plaintiff for liver transplant. Laboratory data showed a MELD score of 8, albumin of 3.1 and INR of 1.2. Dr. Frenette diagnosed end-stage liver disease secondary to hepatitis C. She

indicated that he was a little bit early for transplant listing, but should be listed if they were going to treat his hepatitis C.  Dr. Frenette also indicated that Plaintiff had some minimal hepatic encephalopathy despite sodium benzoate use.  He was to avoid driving and his mother was to monitor his mentation closely.  AR 391-94.  Plaintiff also underwent an abdominal ultrasound, which showed an echogenic liver consistent with chronic liver disease, splenomegaly and suspected portal hypertension.  AR 398.

On the same date, Dr. Paul Chin evaluated Plaintiff for orthotopic liver transplant at California Pacific Medical Center.  Plaintiff complained of fatigue, memory problems and depression.  On mental status exam, Plaintiff appeared quite healthy with normal muscle tone and normal gait.  His affect was fairly euthymic, but restricted, and he had no abnormalities in short-term or long-term memory.  Dr. Chin diagnosed depressive disorder (likely major depressive disorder) and assigned a GAF of 67.  AR 401–03.

On March 28, 2008, Roxanne Morse, Ph.D., completed a consultative psychological assessment.  Plaintiff reported that he was living with his mother and was able to perform all the activities of daily living.  Test results suggested that Plaintiff's overall level of cognitive functioning was in the borderline range.  His immediate auditory memory appeared to be mildly impaired, but his delayed auditory memory and visual memory were in the average range.  His visual/spatial and organizational skills were within normal limits.  His capacity for sustained attention, mental tracking and executive functioning was in the average range.  Dr. Morse indicated that Plaintiff was able to understand, remember, and carry out simple, detailed and complex instructions during the evaluation.  He was able to maintain attention and concentration.  He displayed pace and persistence for the duration of the evaluation and endured the stress of the interview and the testing process.  He was able to interact appropriately with Dr. Morse and his ability to interact with the public, supervisor and coworkers appeared to be unimpaired.  AR 291-95.

On March 28, 2008, Plaintiff was declined for liver transplant listing at California Pacific Medical Center. To become eligible, Plaintiff needed to attend AA twice a week and have his depression treated. AR 407-08.

On April 2, 2008, the California Pacific Medical Center Liver Transplant Team ("Transplant Team") recommended that Plaintiff sign an Alcohol & Drug contract, agreeing to never drink alcohol, to attend AA, to undergo urine toxicology screens, and to quit smoking. If these requirements were met, Plaintiff could be re-referred for transplant consideration in six months. AR 388-89.

On April 9, 2008, a state agency physician found that Plaintiff did not have a severe mental impairment. AR 301-11.

On May 14, 2008, Dr. Gish prepared a letter stating that Plaintiff had esophageal and gastric varices, portal hypertension, hepatic encephalopathy, low albumin, elevated bilirubin, abnormal coagulation with a history of fluid retention and ascites, and he fulfilled section 5.05 social security criteria for complete disability. Dr. Gish opined that Plaintiff was not able to sit, stand, walk or manipulate fine objects. He could not be on ladders, could not work with heavy machinery and could not work in a dusty environment. Dr. Gish concluded by stating, "patient is not employable and is currently in an environment where I am expecting progressive liver disease with high risk of liver cancer, liver failure, need for liver transplant, and death." AR 326.

On June 2, 2008, Dr. Richard Plotzker initially evaluated Plaintiff for EGD/banding of varices and diagnosed him with Hepatitis C induced cirrhosis, alcoholism in treatment and portal hypertension with esophageal varices. AR 467-69. Plaintiff continued to receive treatment from Dr. Plotzker through November 2011. AR 446-69, 549-51. During that time, he underwent at least two EGD procedures. AR 465, 473-74, 494-95.

On August 18, 2009, Dr. Gish examined Plaintiff and noted mild hepatosplenomegaly, trace edema of the extremities, encephalopathy grade 0 to 1 and mild muscle wasting. Plaintiff

planned to meet with Dr. Plotzker to start interferon and ribavirin therapy "after a psychiatric note [was] submitted to state that he had mild depression, mild anxiety and/or specifically recommended antidepressant therapy." Dr. Gish believed Plaintiff was at high risk for progressive liver disease to liver failure and recommended completion of the liver transplant re-evaluation process. AR 384-87.

On November 11, 2008, Plaintiff underwent an abdomen ultrasound, which revealed a coarsely echogenic and nodular liver suggesting cirrhosis with portal hypertension, including a recanalized paraumbilical vein and splenomegaly. AR 377-78. Chest x-rays and a stress test completed the same day were normal. AR 379, 382.

On November 12, 2008, Dr. Frenette evaluated Plaintiff for liver transplant. A review of systems was notable for some depression and confusion. Plaintiff continued to have some difficulties with hepatic encephalopathy despite sodium benzoate use. Laboratory data showed an INR of 1.3. Dr. Frenette saw no major issues with Plaintiff being listed for transplant and would support his listing prior to initiation of hepatitis C therapy. AR 370-72.

On November 13, 2008, Dr. Harish Mahanty, a transplant surgeon, stated that Plaintiff continued to be a good candidate for liver transplant. Plaintiff had a MELD score of 10 and albumin of 3.0. AR 367-68.

On November 25, 2008, Plaintiff was approved for transplant listing. AR 364-65.

On November 26, 2008, Plaintiff underwent a Psychosocial Follow-Up Assessment for liver transplant. Plaintiff reported compliance with all medical appointments and attendance at AA two times per week since the last evaluation. Ms. Davis Marjorie Davis, LCSW, opined that although Plaintiff's depression should be monitored, he could be listed for transplant if medically ready. AR 362-63.

On November 28, 2008, Plaintiff underwent MRI examination of his abdomen, which showed hepatic cirrhosis, portal hypertension and moderate splenomegaly. He also had multiple small arterial phase enhancing foci distributed through the liver. AR 360-61.

On December 11, 2008, the Transplant Team recommended that Plaintiff be placed on the waiting list for a liver transplant. AR 436-37.

On January 12, 2009, Dr. Ben Leonard identified Plaintiff's main problem as depression. Plaintiff was to continue Paxil. AR 415.

On January 14, 2009, Dr. Raphael Merriman, a gastroenterologist/hepatologist, indicated Plaintiff was listed for orthotopic liver transplantation on December 26, 2008, with a MELD score of 12. Plaintiff had no symptoms of encephalopathy, ascites or GI bleeding. A review of his systems was notable for mild depression, which appeared to be under reasonably good control. Dr. Merriman recommended treating Plaintiff's hepatitis C with interferon and ribavirin for 48 weeks. AR 357-59.

On March 24, 2009, Plaintiff underwent a MRI of his abdomen, which was compared with his November 28, 2008. The current MRI showed stable stigmata of cirrhosis and portal venous hypertension, including a small nodular appearing liver and a moderately large spleen. It was an otherwise stable and unremarkable MRI examination. AR 355.

On May 28, 2009, chest, cervical spine and thoracic spine x-rays were negative. AR 420.

On July 13, 2009, Dr. Timothy Davern noted that Plaintiff was given a unit of platelets prior to a dental extraction. During the infusion, Plaintiff had fever, developed nausea and vomited. The procedure was stopped because of the fever. Since that time, Plaintiff had not had any hospitalizations or major complications of liver disease. Dr. Davern described Plaintiff as "mildly chronically ill appearing." On examination, Plaintiff had mild hepatosplenomegaly and trace edema. Dr. Davern did not recommend any changes in Plaintiff's regimen given that his

encephalopathy appeared to be under reasonably good control.  Plaintiff's cirrhosis had been reasonably stable and he was listed for transplant with a low MELD score.  AR 351-54.

On October 13, 2009, Dr. Leonard completed a Questionnaire and opined that Plaintiff's medical problems did not preclude him from performing any full-time work, but he could do no more than sedentary work.  Plaintiff had the primary impairments of hepatitis C, cirrhosis and hepatic encephalopathy.  Over an 8-hour period, Plaintiff could sit 2 hours and stand/walk 2 hours.  He did not need to lie down or elevate his legs.  AR 439.

On December 25, 2009, Dr. Plotzker opined that Plaintiff had medical problems that precluded him from performing any full-time work at any exertional level and he met and/or equaled listing 5.05.  Plaintiff could sit 2 hours and stand and/or walk 1 hour over an 8-hour period.  He did not need to lie down or elevate his legs, but could not lift because of portal hypertension.  AR 547.

On January 7, 2011, Dr. Plotzker indicated that Plaintiff's liver disease was "clearly decompensated" and had been complicated by hepatic encephalopathy, fluid retention, mild hepatic synthetic dysfunction and significant hypersplenism.  Dr. Plotzker opined that Plaintiff was disabled and could not work, his prognosis seemed rather poor and he was not a candidate for hepatitis C treatment given his decompensated liver disease.  AR 549-51.

On March 1, 2011, Dr. Davern stated that Plaintiff's MELD score equaled 10 as of February 2010 and his Albumin level equaled 2.4 on February 1, 2010.  Dr. Davern considered Plaintiff's life to be at significant risk.  AR 548.

On April 6, 2011, Dr. Leonard opined that Plaintiff had severe cirrhosis secondary to chronic hepatitis C.  He needed an MRI to evaluate for hepatoma and a liver transplant.  Dr. Leonard indicated that Plaintiff was not a candidate for a liver transplant because he lacked medical insurance.  AR 556.

<u>ALJ's Findings</u>

The ALJ found that Plaintiff met the insured status requirements through December 31, 2010, and had not engaged in substantial gainful activity since January 10, 2008. The ALJ further found that Plaintiff had the severe impairments of end-stage liver disease secondary to hepatitis C and alcohol with complications of hepatic encephalopathy, hepatitis C, alcohol dependence (in remission) and portal hypertension. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with a limitation to simple, routine tasks, nothing complex, technical or scientific. With this RFC, the ALJ concluded that Plaintiff could perform jobs existing in the national economy. AR 25-33.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen,* 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are

supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since January 10, 2008; (2) has an impairment or a combination of impairments that is considered "severe" (end-stage liver disease secondary to hepatitis C and alcohol with complications of hepatic encephalopathy, hepatitis C, alcohol dependence in remission, and portal hypertension) based on the requirements in the Regulations (20 C.F.R. §§ 404.1520(c)), 416.920(c); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) can perform jobs that exist in significant numbers in the national economy.  AR 25-33.

Here, Plaintiff claims error because: (1) the Appeals Council failed to address significant new evidence; and (2) the ALJ failed to give sufficient reasons to reject the opinions of his treating physicians.

## **DISCUSSION**

Plaintiff submitted additional evidence to the Appeals Council.  The evidence consists of a questionnaire prepared by Dr. Davern dated March 1, 2011, medical records from California Pacific Medical Center dated January 7, 2011, and a letter prepared by Dr. Leonard dated April 6, 2011.  AR 548-51, 555.  The Appeals Council considered this new evidence and found it did not provide a basis for changing the ALJ's decision.  AR 1-4.  In the Ninth Circuit, a district court "consider[s] on appeal both the ALJ's decision and the additional material submitted to the Appeals Council." *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir.1993) (citations omitted).  As the new evidence was considered by the Appeals Council, these records are part of the administrative record, which the Court must consider when reviewing the Commissioner's decision for substantial evidence.  *Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1162-64 (9th Cir. 2012).

According to the new evidence, on January 7, 2011, Dr. Plotzker examined Plaintiff and found him to be chronically ill-appearing with decreased breath sounds and dullness to percussion consistent with at least a small pleural effusion.  He also had a prominent tremor, a palpable hepatomegaly and mild muscle wasting.  Dr. Plotzker opined that Plaintiff's liver disease was "clearly decompensated" and had been complicated by hepatic encephalopathy, fluid retention, mild hepatic synthetic dysfunction and significant hypersplenism.  He agreed with his former colleague's assessment in 2006 or 2007 that Plaintiff was disabled and could not work.  Dr. Plotzker indicated that Plaintiff's prognosis seemed rather poor and that he was not a candidate for hepatitis C treatment given his decompensated liver disease.  AR 549-51.  On March 1, 2011, Dr. Davern indicated that as of February 2010, Plaintiff's MELD score equaled

10 and his Albumin level equaled 2.4. Dr. Davern considered Plaintiff's life to be at significant risk. AR 548. On April 7, 2011, Dr. Leonard stated that Plaintiff had severe cirrhosis secondary to chronic hepatitis C. Although Plaintiff was listed for a liver transplant, he was not a candidate due to his lack of health insurance. AR 555.

The new evidence submitted to the Appeals Council documents a trajectory of Plaintiff's existing condition with worsening symptoms and complications. In particular, the new evidence from Drs. Plotzker and Davern indicates that Plaintiff's prognosis was poor, he suffered from decompensated liver disease, he could not work and his life was at significant risk. This evidence corroborates not only the earlier opinions rendered by Drs. Plotzker and Davern, but also the opinions rendered by Dr. Gish in December 2007, May 2008 and August 2009 and the opinion rendered by Dr. Leonard in October 2009.

More specifically, Dr. Gish examined Plaintiff in December 2007 and found that he had a life-threatening disease and was disabled under Social Security criteria. AR 246-49. Subsequently, in May 2008, Dr. Gish stated that Plaintiff had esophageal and gastric varices, portal hypertension, hepatic encephalopathy, low albumin, elevated bilirubin, abnormal coagulation with a history of fluid retention and ascites. Dr. Gish again opined that Plaintiff met Social Security criteria for complete disability and that he was unable to sit, stand, walk or manipulate fine objects. Dr. Gish expected Plaintiff would have progressive liver disease with high risk of liver cancer, liver failure, need for liver transplant, and death. AR 326. In August 2009, Dr. Gish continued to believe that Plaintiff was at high risk for progressive liver disease to liver failure. AR 384-87. Similarly, Dr. Leonard opined in October 2009 that Plaintiff only could sit for 2 hours and stand/walk 2 hours over an 8-hour period. AR 439.

In sum, Plaintiff's physicians appeared to agree that Plaintiff had a life threatening condition which prevented him from working or engaging in even sedentary work and the new evidence merely confirms these opinions. The Commissioner attempts to argue that while

Plaintiff had a life threatening condition, "the medical severity of that condition did not translate into any significant symptoms and work limitations." Opening Brief, p. 11.  This argument is not persuasive.  Not only did Plaintiff's physicians identify specific work-related limitations, such as limited sitting and standing, they also identified specific symptoms resulting from Plaintiff's condition, such as decreased mentation, edema, muscle wasting, and encephalopathy. AR 246-49, 326, 384-87, 391-94, 547.

Plaintiff contends that the ALJ did not provide sufficient reasons to reject the opinions of Plaintiff's physicians in favor of the non-examining state agency medical consultants.  The Court agrees.  The opinions of a claimant's treating physicians are entitled to more weight than the opinions of doctors who do not treat the claimant.  20 C.F.R. § 404.1527(d)(2); *Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007)*.  Only if there is substantial evidence in the record contradicting the opinion of the treating physicians are their opinions no longer entitled to controlling weight.  *Id.* at 632.  Even in that instance, the opinions of treating physicians are still entitled to deference.  *Id.*  If the ALJ disregards the opinions of the treating physicians, he must make findings setting forth specific and legitimate reasons for doing so.  *Id.*

Here, three of Plaintiff's treating physicians, Drs. Gish, Plotzker and Leonard found him incapable of working at all due to his liver disease and related complications.  The opinions of these physicians were based on several medical examinations, along with multiple laboratory tests and reports, over a lengthy period of time.  Indeed, Dr. Gish followed Plaintiff's liver disease over the course of nearly two years and Dr. Davern treated Plaintiff for more than one year.  Despite this, the ALJ gave little weight to these opinions.  Rather, the ALJ gave significant weight to the opinions of the state agency medical consultants who never examined or treated Plaintiff and who rendered their opinions in 2008 without the benefit of longitudinal medical records regarding Plaintiff's mental and physical condition.  AR 286-90, 301-11.

Although the ALJ provided additional reasons for rejecting the opinions of Plaintiff's physicians, these reasons are not legitimate. For instance, the ALJ considered Dr. Gish's May 2008 opinion that Plaintiff met a Listing, was disabled due to an inability to sit, stand, walk, manipulate fine objects, climb ladders and work with heavy machinery or around dust and was at high risk of liver failure and death. The ALJ gave little weight to this opinion because it was based on a single evaluation, not a longitudinal history, there were no noted symptoms in the treatment records, the examination was completed when Plaintiff was either drinking or recently sober and subsequent medical records showed signs of improvement. AR 30-31. These are not legitimate reasons given the ALJ's reliance on the non-examining state agency physicians who rendered opinions without the benefit of an examination or a longitudinal history. They also are not legitimate in light of Dr. Gish's subsequent examinations and opinions, along with the medical records as a whole, which corroborated Dr. Gish's 2008 opinion.

Additionally, the ALJ considered Dr. Leonard's October 2009 opinion summarizing Plaintiff's condition and finding him incapable of sitting no more than two hours in an eight-hour period and standing/walking no more than two hours in an eight-hour period. The ALJ gave little weight to Dr. Leonard's opinion to the extent it was inconsistent with the ALJ's RFC finding. The ALJ explained the Dr. Leonard's opinion was inconsistent with his own treatment records, "which did not indicate any apparent limitations or reasons why the claimant would have problems standing or sitting." AR 31. This is not a legitimate reason to reject Dr. Leonard's opinion given that, at a minimum, Dr. Leonard's treatment records reflected dorsal back pain for over a year, along with hepatosplemegaly, cirrhosis, portal hypertension, hepatic encephalopathy, depression and medication side effects. AR 414-15. Moreover, as Plaintiff's primary care physician, Dr. Leonard had the benefit of reports and treatment records from Drs. Davern, Merriman, Frenette and Plotzker regarding Plaintiff's condition and symptoms. AR 351-54, 357-59, 392-94, 395-97, 427-32, 433-35.

As a final matter, the ALJ considered Dr. Plotzker's December 2009 opinion that Plaintiff could not complete even sedentary work due to limitations in his ability to lift, stand, walk or sit.  The ALJ gave no weight to Dr. Plotzker's opinion because there was no information in Dr. Plotzker's treatment notes that would explain Plaintiff's inability to perform sedentary work and Dr. Plotzker's opinion "seemed to give full weight to the subjective opinions of the claimant."  AR 31.  These are not legitimate reasons to reject Dr. Plotzker's opinion.  First, there is no indication in the medical records that Plaintiff complained to Dr. Plotzker of an inability to perform sedentary work and the ALJ does not cite to any such reports by Plaintiff.  Second, and more importantly, the ALJ appears to overlook Dr. Plotzker's assessment of hepatitis C, cirrhosis, high viral load, neutropenia, and portal hypertension preventing any lifting.  AR 447, 547.  Furthermore, Dr. Plotzker, like Dr. Leonard, received treatment and examination records from other physicians, which revealed evidence of hepatic encephalopathy, edema, thrombocytopenia, depression, confusion, mild muscle wasting, and hepatosplenomegaly.  AR 351-54, 370-72, 384-86.

Based on the above, the Court finds that the ALJ failed to properly evaluate the medical evidence of record from Plaintiff's physicians and the Commissioner's decision denying Plaintiff disability benefits is not supported by substantial evidence.

Section 405(g) of Title 42 of the United States Code provides: "the court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where,

however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted).  Indeed, it is appropriate to credit evidence and direct an award of benefits where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the clamant disabled were such evidence credited.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

Here, there are no outstanding issues that must be resolved and further administrative proceedings are not necessary based on the complete record.  As discussed above, Plaintiff suffers from a life threatening condition and is unable to perform even sedentary work.

### **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole.  Accordingly, this Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED and that the matter be REVERSED AND REMANDED for the award of benefits to Plaintiff.

These Findings and Recommendations are submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 631(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within **fourteen (14) days** after being served with a copy, any party may serve on opposing counsel and file with the court written objections to such proposed findings and recommendations.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within

**fourteen (14) days** after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1).

IT IS SO ORDERED.

    Dated:   **July 30, 2012**                     /s/ *Dennis L. Beck*
                                                          UNITED STATES MAGISTRATE JUDGE